McIlvaine, J.
The first question in this case is made on the instrument sued on. Does it show a contract ? The point made is, that it lacks mutuality.
It is true, the name of the party with whom the signers of the instrument were dealing is not set out in the writing ; but the special findings of fact show the party to whom it was delivered, and the purpose for which it was made. The person who solicited the subscription in aid of the construction of the road named, and into whose hands the paper was placed by the defendants, not being an authorized agent of the railway company, must, under the circumstances, be regarded as the agent of the defendants for the purpose of delivering it to the company. If, then, it were conceded that the Mansfield, Coldwater and Lake Michigau Railway Company, to which the instrument was delivered, and which was then engaged in constructing the railroad named in the instrument, had at the time capacity to accept subscriptions to its stock, there can be no doubt *234 that, by accepting the instrument, the company became' bound, upon the payment of the money, to issue its stock to the defendants; and, on the other side, upon the performance by the company of the condition named in the instrument, the defendants were bound to pay the amount of their subscription. The introduction of parol testimony to prove the delivery of the instrument, and thus establish the mutuality of engagements between the parties, was no infringement of the rule of evidence which forbids the use of pai’ol contemporaneous evidence to contradict or vary the terms of wi’itten instruments.
It is also claimed by defendants that this writing was a mere voluntary statement that, upon the happening of a certain event, they -would take stock; that it was without considex’ation, and contains no expressed engagement to pay.
As to the condition—to wit, that the railroad should come near enough to the town of Weston to suit the convenience of the town—there is no pretense that it has not been pei’formed. And the supposed defect as to the contracting party having been supplied by proof of its delivery to the M., C. & L. M. Railway Company, and other circumstances attending its execution, there is left no doubt as to the sufficiency of the consideration. As to the last proposition, it is enough to say that the agreement of defendants to take the stock of the railway conrpany necessarily implies a promise on their part to pay for it.
Other and the principal questions in the case relate to-the construction and effect of the consolidation act of April 10, 1856 (53 Ohio L. 143), the first section of which was amended May 6,1869 (66 Ohio L. 127). The first five sections of that act are as follows :
“ Section 1. That whenever the lines of railroad of any x’ailroad companies in this state, or any portion of such lines, have been or may be constructed so as to admit the passage of burden or passenger cars over any txvo or mox-eof such roads continuously, without break or interruption,, such companies are hereby authorized to consolidate them *235 selves into a single corporation; and that it shall be lawful' for any railroad company in this state, organized under the general or any special law, or which may hereafter be organized in this state, and whose line of road shall be made or in progress of construction to the boundary line of the state, or to any point either in or out of this state, to consolidate its capital stock with the capital stock of any railroad in an adjoining state, the line of whose road has been made, or is in process of construction to the same point, and where the several roads so unite as to form a continuous line for the passage of cars; provided, that roads running to the hank of any river which is not bridged shall be held to be continuous under this act.
“ Sec. 2. That said consolidation shall be made under the conditions and restrictions following, that is to say: First. The directors of the several corporations may enter into a joint agreement, under the corporate seal of each company, for the consolidation of said companies, and prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of the directors and other officers thereof, and their place of residence; the number of shares of the capital stock, the amount of each share, and the manner of converting the capital stock of each of the said companies into that of the new corporation, with such other details as they shall deem necessary to perfect such new organization and the consolidation of said companies. Second. Said agreement shall be submitted to the stockholders of each of the said companies, at a meeting thereof, called separately, for the purpose of taking the same into consideration ; due noticie of the time and place of holding such meeting, and the object thereof, shall be given by written or printed notices, addressed to each of the persons in whose names the capital stock of said companies stands on the books thereof, and also- by a like notice published in some newspaper in the city or town where such company has its principal office or place of business.
“ And at the said meeting of stockholders the agreement *236 of the said directors shall be considered, and a vote by ballot taken for the adoption or rejection of the same, each .share entitling the holder thereof to one vote, and the ballots shall be cast in person or by proxy, and if two-thirds of all the votes of all the stockholders shall be for the adoption of said agreement, then that fact shall be certified thereon by the secretary of each of said companies, and the agreement so adopted, or a certified copy thereof, shall be filed in the office of the secretary of state, and shall be deemed and taken to be the agreement and act of consolidation of said companies. And a copy of said agreement and act of consolidation, duly certified by the secretary of state, under the great seal- of the State of Ohio, shall be evidence of the existence of said corporation.
“ Sec. 3. Upon the making and perfecting the agreement and act, as provided in the preceding section, and filing the same or a copy with the secretary of state, the several corporations, parties thereto, shall be deemed and taken to be one corporation, possessing within this state all the rights, privileges, and franchises, and subject to all the restrictions, disabilities, and duties of such corporation of this state so consolidated.
“ Sec. 4. It shall be the duty of the stockholders, at the meeting called to take into consideration said agreement, as hereinbefore provided, after the adoption of the same, to appoint a time and place for the election of the directors and other officers of the new corporation, which may be provided for in said agreement, notice whereof shall be given by the secretary of each of said companies, in some newspaper printed at the place of the principal office of each of said companies, of the time and place of said election, at least three weeks previous thereto, which election shall be conducted in the manner that may be prescribed by said meeting of stockholders.
“ Sec. 5. Upon the election of the first board of directors of the corporation created by said agreement of consolidation, and by the provisions of this act, all and singular the rights, privileges, and franchises of each of said corpora *237 tions, parties to the same, and all the property, real, personal, and mixed, and debts due on account of subscriptions of stock or other things in action, shall be deemed to be transferred and vested in such new corporation without further act or deed; and all property, all rights of way, and all other interests shall be as effectually the property of the new corporation as they were of the former corporations, parties to said agreement; and the title to real estate, either by deed, gift, grant, or by appropriations under the laws of this state, shall not be deemed to revert or be impaired by reason of this act: Provided, that all rights of creditors, and all liens upon the property of either of said corporations, shall be preserved unimpaired, and the respective corporations may be deemed to be in existence to preserve the same; and all debts, liabilities, and duties of either of said companies shall thenceforth attach to said new corporation and be enforced against it to the same extent as if said debts, liabilities, and duties had been contracted by it.”
1. Had the Mansfield,' Coldwater and Lake Michigan Raihoay Company, on the 23d of May, 1871. capacity to accept subscriptions to its capital stock ?
It will be observed that this date was after the adoption of the agreement to consolidate by the stockholders of this company and the Ohio and Lake Michigan Company, but before the certified agreement had been filed with the secretary of state. The foregoing question must therefore be answered in the affirmative. There is nothing in this statute which deprives the consolidating companies, respectively, of the full enjoyment and use of all their powers and franchises at any time before consolidation is consummated. Where, therefore, all the capital stock of such consolidating companies has not been previously subscribed, we can find no ground for denying to them the privilege of placing their stock during the pendency and progress of steps preliminary to consolidation; and, from the provisions of section 3 of the act, it is clear that consolidation is not con *238 summated until the certified agreement of consolidation has been filed with the secretary of state.
2. Another point made by defendants’ counsel may be stated thus: Their agreement was to take stock in the Mansfield, Coldwater and Lake Michigan Raihoay Company. The stock of that company was consolidated with that of the Ohio and Michigan company, so as to form the stock of plaintiff in error. The first-named company made it impossible, by reason of the consolidation, to perform the ■contract by the delivery of its stock upon payment of the subscription, and the defendants never having assented to take the consolidated company’s stock in lieu of the stock subscribed for, they should not be obliged to pay their subscription. -
It will be observed that defendants’ subscription became absolute, by performance on the part of the company before consolidation was perfected; in fact, the condition was performed at the time the subscription was made.
And it must also be observed that, at the date of defendants’ subscription, the statute of 1856, under which consolidation was effected, was then in force.
Under these circumstances, we are of opinion that the provisions of the 10th section for the relief of stockholders refusing assent to the consolidation, were available to the defendants to the same extent as to stockholders similarly situated.
It is not now necessary, however, to determine what relief could be afforded under the circumstances or the mode in which it could have been obtained; it being enough for the purposes of this case to say, that they were not, by reason of consolidation, released from the payment of their subscriptions to the capital stock of the original companies, or at least from the payment of the difference, as against them, between the amount of their subscription and the value of the stock for which they subscribed.
This conclusion results from the fact that their contract ■of subscription must be construed as having been made with reference to the consolidation act, by which they are *239 bound, as fully as if its provisions had been copied into their ■contract of subscription.
Nor does it avail the defendants to say now, that at the time of their making the subscription, they were not informed that steps preliminary to consolidation were in progress. They have made no allegation of fraud, and, indeed, the special findings of fact show that knowledge of the progress of consolidation would not have deterred them from making the subscription.
8. An averment in the original petition, to the effect that the contract of subscription sued on, was executed to the Mansfield, Coldwater andLake Michigan Railway Company^ to be delivered to the plaintiff for its use and benefit, has been commented on by defendants’ counsel. Ve attach no importance to the literal meaning of this averment. The whole case, as made in the petition and in the special findings by the Court of Common Pleas, shows that the plaintiff, if it can recover at all, must recover on the ground that it has succeeded to the rights of the railway company, by virtue of the 5th section of the consolidation act, and not upon a contract made with the plaintiff', or for its use and benefit.
4. When consolidation, under this statute, is consummated, a new corporation is thereby created (Shields v. The State, ante, p. 86.), which is capable of succeeding to all the rights, privileges, and franchises of the corporations, parties to the agreement of consolidation, including debts due to them on account of subscriptions of stock. But such succession does not take place until the happening of another event—• to wit, the election of a board of directors of such new corporation. The succession is provided for and controlled by the 5th section of the act, which is in these words:
“ Upon the election of the first board of directors of the corporation created by said agreement of consolidation, and by the provisions of this act, all and singular the rights, privileges, and franchises of each of said corporations, parties to the same, and all the property, real, personal, and mixed, and debts due on account of subscriptions of stock *240 or other things in action, shall be deemed to be transferred and vested in such new corporation without further act or deed.”
On the record before us, it is found that the certified agreement to consolidate between the Mansfield, Coldwater and Lake Michigan Railway Company and the Ohio and Michigan Railway Company was filed with the secretary of state of the State of Ohio, on the 1st of June, 1871, and not before. From this finding it follows, under section 3 of the consolidation act, that the consolidated corporation—to wit, the plaintiff in error’—had no existence before the 1st of June, 1871. It does not appear, however,anywhere in the record, that a board of directors of the plaintiff' in error was elected at any time after the date of its creation—to wit, June 1, 1871. True, it is alleged in the original petition that such board was duly elected on. the 10th of May, 1871. Now, if the alleged date of such election be material, it is clear that the election was premature, and was not and could not have been a legal election. There was then no corporation, no stockholders; therefore, no board of directors.
It certainly was not the intention of the legislature to authorize, under section 5 of the statute, an election of directors before the corporation was brought into existence. It is absurd and impossible that all the property,, rights, powers, and franchises of the consolidating corporations could be transferred to and vested in a nonentity.
If this construction of the statute be objected to on the-ground that it places all the rights and franchises of the consolidated companies in abeyance during the interval between the creation of the new company and.the election of its first board of directors, we answer not so. The consolidating corporations continue for the purpose of holding and controlling them until the election takes place. The divesting of the old and the investing of the new corporation are simultaneous.
If, however, the date of the alleged election, as stated in the petition, be immaterial, and it might have been shown- *241 that an election of directors took place after the consolidation was consummated, still the plaintiff in error is not relieved from difficulty. The defendants took issue upon the only allegation of an election made in the petition, and thus placed the burden of proving it upon the plaintiff'. Upon this state of pleading, the plaintiff was not entitled to judgment until the issue was found in his favor. There is no such finding in the record. This issue must therefore be resolved in favor of defendants
The plaintiff below having failed to show that it had succeeded to the rights of the consolidating companies, the judgments were properly rendered against it.

Judgment affirmed.

Welch, C. J., White, Rex, and Gilmore, JJ., concurred.